# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 22-10571 |
| | ) | |
| Matthew M. Motil, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge Arthur I. Harris |
| | ) | |
| | ) | |
| | ) | |
| Andrew R. Vara, | ) | Adversary Proceeding No. 22-1084 |
| | ) | |
| Plaintiff, | ) | **DEFENDANT'S REPLY TO** |
| | ) | **OBJECTION OF UNITED** |
| v. | ) | **STATES TRUSTEE TO** |
| | ) | **DEFENDANT'S MOTION** |
| | ) | **TO DISMISS CASE** |
| Matthew M. Motil, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## INTRODUCTION

The United States Trustee (the "Trustee") filed the Complaint [Docket No. 1] initiating this case on September 30, 2022. Defendant Matthew M. Motil (the "Defendant") timely filed a Motion to Dismiss [Docket No. 4] on October 31, 2022. On November 17, 2022, the Defendant filed an Amended Motion to Dismiss [Docket No. 10]. The Amended Motion to Dismiss supersedes the original motion and is herein referred to as the "Motion to Dismiss." On December 8, 2022, the Trustee filed an Objection to the Motion to Dismiss [Docket No. 14], which is referred to herein as the "Trustee's Objection."

The Trustee's Objection runs to 37 pages, and contains many rhetorical flourishes and a lot of (misplaced) advocacy, but it does not offer the dispassionate analysis that would have been

1

required to fairly confront the legal reasons for dismissal set forth in the Motion to Dismiss. This Reply analyzes the shortcomings of the Trustee's Objection below. It is organized by separate sections corresponding to each count of the Complaint.

## COUNT ONE

The Objection does not respond at all to the legal argument made by the Defendant that the transfer of real estate owned by the 100% Corporate Entities (as opposed to the Debtor himself) may not be used to deny discharge under Section 727(a)(2) of the Bankruptcy Code. In Paragraph 7 of the Motion to Dismiss, the Debtor articulates, as a ground for dismissal of Count One, that only transfers of property owned by the Debtor, himself, as opposed to transfers of property owned indirectly through corporate entities, can be used as the basis for denial of discharge. Paragraphs 8 – 11 of the Motion to Dismiss cite six cases, all of which are directly on point, and all of which hold that Section 727(a)(2)(A) by its own terms applies only to "property of the debtor," not to property of a corporate entity owned or controlled by the debtor. These six cases, which in turn cite to still more numerous cases in accord, are: *In re Thurman*, 901 F 2nd 839 (10th Cir 1990); *Trivedi v. Levine*, 2014 Bankr. LEXIS 5161 (Bankr. N.D. Ill. 2014); *Hulsing Hotels Tenn. Inc. v. Steffner*, 479 B.R. 746 (Bankr. E.D. Tenn. 2012); *In Re Colodner*, 147 B.R. 90 (Bankr. S.D.N.Y. 1992); *CIT Group/Factoring Mfrs. Hanover, Inc. v. Srour*, 138 B.R. 413 (Bankr. S.D.N.Y. 1992); and *In Re Wines*, 114 B.R. 794 (Bankr. S.D. Fla. 1990).

The Trustee does not respond to the Defendant's well-supported argument regarding the text of the statute or the caselaw. Not once in the 37 pages of Objection filed by the Trustee is there any mention of any of the cases cited by the Defendant for the proposition that only transfers of property owned directly by the Debtor may be used as grounds for withholding the discharge. There is literally no attempt in the Trustee's Objection to distinguish, criticize, or challenge any of

those cases. There is also no analysis of the statutory text of Section 727(a)(2), upon which all of the case law cited by the Defendant is based.

The legal analysis of direct versus indirect transfers provided by the Defendant in the Motion to Dismiss is deserving of careful consideration because it is based on the limited statutory language employed by Congress to justify the extreme remedy of denying a discharge. One of the cases cited by the Defendant, *In re Thurman*, 901 F.2d 839 (10th Cir. 1990), is particularly instructive. It is a short opinion, and embodies the virtues of clarity and concision. The *Thurman* Court held: "Congress intended to limit the reach of § 727(a)(2)(A) only to those transfers of property in which a debtor has a direct proprietary interest." *Thurman*, *Id,* at HN 2.

The *Thurman* case also considered the same argument made in paragraph 32 of the Trustee's objection, that the Trustee plead that the property was property of the Defendant. *Thurman* dealt with the argument as follows:

> "MBank has cited no authority, and we have found none, which holds that the transfer of property of another which has incidental effect upon the assets of debtor satisfies the requirements of § 727(a)(2)(A). MBank argues that that the analysis employed by the bankruptcy and district courts raises form over substance. While facially appealing, that argument simply fails to consider the language employed by Congress in the adoption of § 727(a)(2)(A).
>
> HN1 The words "Property of the debtor" are not the same as "property in which the debtor has a derivative interest." To the contrary, the language of the statute is sufficiently circumscriptive to eliminate such an interpretation."

*In re Thurman,* 901 F.2d 839 at 841 (10th Cir. 1990).

Another reference to *Thurman* resonates in this case. In footnote 2, the *Thurman* Court noted that:

"MBank devotes a substantial portion of its brief to the allegedly fraudulent nature of the transfer of the WAB assets, but that issue is of no moment in this appeal. The district court's holding was in no way predicated upon whether debtor's conduct was fraudulent. It should thus be evident, even if the transfer of the WAB assets was accompanied by fraud, and we draw no such conclusion, the fact that those assets were not the property of the debtor is alone sufficient to deny the relief sought by the creditor."

*Thurman, Id,* at footnote 2. Were the fact in issue here, the Defendant would deny any fraudulent intent in connection with the transfer of the property, but the fact is not in issue in this motion, and was not in issue in the cited case, because transfers of property owned indirectly by a debtor are outside the scope of Section 727(a)(2)(A).

In lieu of the traditional approach of responding to the actual legal theories raised in the Motion to Dismiss, the Trustee attempts, in his Objection, to plead a veil piercing or alter ego argument that does not appear in his Complaint. See Paragraphs 32 – 41 of the Objection. Paragraph 32 begins with the startling assertion that the Trustee did plead that the West 50th street property was property of the Defendant as required by Section 727(a)(2). However, that assertion is easily and specifically disproved with reference to UST Exhibit 14 of the Trustee's own Complaint, which is the deed of transfer of the West 50th street property, and clearly identifies the Grantor as NS Equity Cleveland, LLC, and makes no mention of Matthew Motil. Had the Trustee confronted *Hulsing Hotels Tenn., Inc. v Steffner*, 479 B.R. 746 (Bankr. E.D. Tenn. 2012), another of the cases cited in the Motion to Dismiss, he would have found that "It is black letter law that the property of a corporation or limited liability company belongs to that entity, not the owners of the entity, even

4

if the corporation has only one shareholder or member." *Hulsing Hotels Tenn., Inc. v. Steffner, Id.* at HN14. The Trustee's attempt to argue that the property was owned indirectly by the Defendant is refuted by all of the caselaw cited by the Defendant in his Motion to Dismiss.

The attempt by the Trustee to plead an alter ego or veil piercing argument in his Objection is unworkable, for several reasons. First of all, there was no alter ego or veil piercing argument made in the Complaint. Secondly, a case cited by the Trustee, himself, *United States Trustee v Zhang*, 463 B.R. 66 (Bankr. S.D. Ohio 2012) points out that Sixth Circuit and Ohio law do not recognize reverse veil piercing principles. *Zhang, Id*, at HN 5. As the *Zhang* court explains, it is under the theory of reverse piercing of the corporate veil that creditors or a Trustee seek to reach the assets of a legal entity in which the debtor holds an interest. See *Zhang*, *Id*, at FN 9. Ohio courts have not adopted the concept of reverse piercing of the veil. Accordingly, even if the Trustee could initiate a veil piercing argument now, which he cannot, Ohio law would not allow access by creditors or the Case Trustee to the West 50th Street property. In addition, as explained below, case law cited by the Defendant (none of which is challenged in any way in the Trustee's Objection) rejects the use of alter ego or veil piercing theories in discharge litigation because those theories are inconsistent with Section 727(a)(2)(A).

The cite to *Zhang* set forth by the Trustee in Paragraph 41 of the Objection is accompanied by cites to four additional cases, which are offered by the Trustee for the theory that bankruptcy courts may disregard a debtor's corporate entity to deny discharge under Section 727(a). Every one of the cases cited in Paragraph 41 is inapposite. These cases all deal with commingling and transfers of money originally owned by the debtor (as opposed to assets owned by the corporate entities) made between corporate and individual accounts. Moreover, three of the cases cited in Paragraph 41 of the Trustee's Objection (*In re Mosher, In re Polermo,* and *In re Bonham*) all involved

5

corporations whose charters had been revoked or cancelled. This factor was cited by the court as a reason to disregard the supposed corporate form in each of the three cases. In the remaining case, *In re Butler*, the court found that the debtors were playing a game of "hide and seek" by transferring their personal funds between a number of corporate entities to evade the legitimate claims of creditors. Each case cited by the Trustee relies heavily on comingling of personal and corporate bank accounts, and none considers facts in any way similar to those found in the case at bar. A critical difference between commingling cases and the case at bar is that once money is commingled, ownership can be disputed. Such is not the case with real property, and the analysis is therefore different.

The cases cited by the Defendant in the Motion to Dismiss address the veil piercing and alter ego arguments and reject the use of those state law-oriented theories in bankruptcy discharge litigation. *See, e.g., Trivedi v. Levine,* 2014 Bankr. LEXIS 5161 (Bankr.N.D. Ill. 2014), at HN8, where the court noted:

> "Section 727(a)(2)(A) by its own terms applies only to "property of the debtor" not to property of a corporation owned or controlled by a debtor that a bankruptcy court may later deem to be an alter ego of the debtor. Congress chose this simple and direct language in § 727(a)(2)(A), and most courts have applied it as written."

*Trivedi, Id. See also, SC Advisors 7, LLC v. Rudnick (In re Rudnick),* 2021 LEXIS 972 at HN6 (Bankr.N.D. Fla. 2021) (Section 727(a)(2) does not apply to hypothetical assets creditors later may bring into the estate under fraudulent transfer or alter ego theories); *Gebhardt v. McKeever (In re McKeever),* 550 B.R. 623, 635-636 (citing additional case authorities).

At its heart, the issue of indirect ownership of transferred property boils down to statutory construction. As *In re Colodner*, 147 B.R. 90 (Bankr. S.D.N.Y. 1992) held: "It does not follow

6

22-01084-aih    Doc 18    FILED 12/14/22    ENTERED 12/14/22 19:43:57    Page 6 of 18

that because the debtor may have caused his corporation to transfer its assets in fraud of its creditors, it should also follow that the transfer of property of another entity should support a denial of the debtor's discharge when he is not charged with having fraudulently transferred any of his own property within the meaning of 11 U.S.C. § 727(a)(2)(A)." *Colodner, Id.,* at HN5. The Trustee's Objection sets forth his frustration with Congress' construction of Section 727 in paragraph 4: "What the Defendant means, however, is that the Bankruptcy Code does not (quite) provide a statutory framework that could prevent his discharge…" The Trustee's admission is relevant. As the *Thurman* Court explained in footnote 2, *supra, "*the fact that those assets were not the property of the debtor is alone sufficient to deny the relief sought by the creditor."

It is remarkable, given the length of the Trustee's Objection, and the importance of construing the governing statute and case law which is on all four corners with the facts of this case, that the Trustee ignores both the statutory argument made by the Defendant and the relevant case law. The Trustee's Objection to the Motion to Dismiss is not well-taken, and Count One of the Complaint must be dismissed.

## COUNT TWO

The Trustee's Objection also fails to engage with the holding of *Randolph v. Fry*. That case, decided by a bankruptcy court within the Sixth Circuit, makes it clear that discharge should be withheld under Section 727(a)(3) of the Bankruptcy Code only where records have been falsified in a way that makes it impossible to ascertain the financial condition or material business transactions of the Debtor *now*, in connection with the bankruptcy case. See *Randolph v Fry*, 2022 Bankr. LEXIS 251 at HN 12. The court notes that exceptions to discharge speak only upon the filing of a bankruptcy case, and that the bankruptcy court must ascertain whether the debtor's

7

records are adequate to permit creditors to ascertain his or her financial condition or business transactions.

The Trustee does not make a serious effort, either in the Complaint, or in the Objection, to argue that the Defendant's alleged use of a preprinted notary acknowledgement of his own signature on certain mortgages has made it impossible to determine his financial condition or material business transactions *now,* in connection with the bankruptcy case. Instead, the Trustee argues, in Paragraph 71 of the Objection, that at least one of the creditor investors and also the case Trustee were unaware that the purported mortgages were invalid until after the 2004 Exam, over six months after the petition date. Implicit in this statement, of course, is that the case Trustee and the creditor investors are *now* aware that the Defendant used a preprinted notary authorization in connection with his signature on several mortgages. This proves that far from rendering it impossible to determine the Debtor's financial condition or material business transactions, all of the facts concerning both are now evident and in the record. On the face of it, Count Two of the Complaint must be dismissed under the holding of *Randolph v. Fry*.

The Trustee, not having found a meaningful way to prevail under *Randolph v. Fry,* urges the court that *Randolph v Fry* is wrong, and should not be followed by this court. See Paragraph 78 of the Objection. *Randolph v Fry* should not be dismissed so easily. The court in that case undertook an extensive historical analysis of Section 727(a)(3) and its predecessors to determine the correct burden of proof for the Trustee under Section 727(a)(3). The logic of the case is supported not only by the history of Section 727(a)(3) and its predecessors but by extensive case law construing the Section. It is part of that case law, as the Trustee acknowledges, that the Trustee must show that the Debtor failed to maintain and preserve adequate records. *See* Trustee's Objection, Paragraph 73. Here, the Trustee has not shown, or even attempted to show, that the Debtor failed

to maintain or preserve adequate records. Instead, the Trustee takes issue with the quality of the notarization on some of the documents.

The Trustee has demanded copies of all mortgages and promissory notes issued by the corporate entities owned by the Defendant and has received *all* of the documents. In Paragraph 74 of the Objection, the Trustee inexplicably argues that the first element of the *Alten* Test is satisfied, and that that fact is not in dispute. The Trustee is incorrect in that assertion, and in fact, the Trustee's case founders on this point: Far from showing that the Debtor failed to preserve records, the Trustee has shown only (taking all facts plead by the Trustee as true for purposes of the Motion to Dismiss) that the Defendant adopted an inappropriate expedient in notarizing certain documents. That allegation, even if accepted as true, does not justify withholding a discharge under Section 727(a)(3).

Section 727(a)(3) is, as the *Fry* case held, not intended as a general prohibition of bankruptcy discharge for persons who have falsified any record, in any time, in any context. Instead, Section 727(a)(3) denies discharge where the records of a debtor's financial activities are too obscure to support the discharge. *See, e.g., Turoczy Bonding Co. v. Strbac,* 235 B.R. 880 (6th Cir. BAP 1999), where substantially all of the records of a debtor and his companies were missing. The problem with the Trustee's theory in this case is that the inappropriate notarization alleged here did nothing to obscure the Defendant's financial picture or material business dealings. In addition, all of the allegedly defective mortgages have survived and are part of the documentation given to the Trustee in this case.

Comparing the case at bar to an authentic failure to preserve records case, such as *Farm Credit Mid-Am., PCA v. Tingle,* further illustrates the difficulties with the Trustee's position. In the *Tingle* case, an absence of financial records in a farming operation left no way to trace payments to

9

22-01084-aih    Doc 18    FILED 12/14/22    ENTERED 12/14/22 19:43:57    Page 9 of 18

creditors, dispositions of farm property, payment of taxes or transfers to relatives. Similar problems occurred in the *Turoczy Bonding Co. v. Strbac case, supra.* In both cases, discharge was denied. Here, there is no lack of records, and no gap in anyone's knowledge of the facts of the case. Consequently, there is no reason to withhold or deny the discharge.

The Trustee also fails to confront significant procedural problems under case law other than *Randolph v. Fry*. The cases of *McDermott v. Neff,* 2015 LEXIS 4361 (Bankr. N.D. Ohio 2015) and *U.S. Trustee v. Zhang,* 463 B.R. 66 (Bankr. S.D. Ohio 2012) each note that Section 727(a)(3) applies a shifting burden of proof. First, the U.S. Trustee must establish a prima facia case that the debtor failed to keep adequate records. *Zhang, Id.* at 60-61. Once that burden is satisfied, (which it is not, and cannot be in this case), the debtor then has to provide the U.S. Trustee "with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable time past to present." *Id.*

Here, the Trustee has failed to meet his burden of demonstrating that the Defendant failed to keep adequate records. In fact, the Trustee is on record at a hearing in this Court as confirming that the debtor has complied fully with the Trustee's document requests. The Trustee's Objection does not argue that the Debtor's records are incomplete or that information is missing, and the Trustee therefore tacitly admits that the inappropriately notarized documents do not comprise a gap in the Defendant's records. Here, as in *Zhang and McDermott,* the Trustee has failed to specify what is missing or how additional or different records would assist the Trustee in determining the Defendant's financial condition.

Instead of carrying his burden with respect to what is allegedly missing and how finding it would change the case, as he is required to do, the Trustee has resorted to attempts to sensationalize and exaggerate the extent and consequences of the Defendant's alleged inappropriate notarization

("Digital Notary Forgery"). There is no language in Section 727(a)(3) that authorizes denial of discharge for incorrectly notarizing a debtor's own signature, though, and the Trustee has not made his prima facia case. As a result, Count Two must be dismissed.

**COUNT THREE**

In Count Three, the Trustee's Objection does not engage with, confront, or examine the authority cited by the Defendant in support of dismissal. That authority consists of the federal pleading standards established under the seminal U.S. Supreme cases of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*") and *Ashcroft v. Iqbal,* 566 U.S. 662 (2009) ("*Iqbal*"), as well as the requirement to plead fraud with specificity under FRBP 7009. In ignoring the cited authorities, the Trustee's Objection continues a pattern of refusing to fairly confront the issues raised in the Motion to Dismiss.

In the most often quoted language from *Twombly,* the Supreme Court held that a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action "will not do." *Twombly, Id.,* at 555. *Twombly* holds that a complaint must contain enough facts to state to state a claim that is plausible on its face. *Id.* at 570. *Iqbal* holds that a claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. The Sixth Circuit has held that where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the Complaint has alleged-but has not shown, that the pleader is entitled to relief. *Aishaibani v. Litton Loan Servicing, LP,* 528 Fed. Appx. 462 (Sixth Cir.2013). The *Aishaibani* case is particularly relevant here, because the Trustee has alleged, but has not shown, that he is entitled to relief.

11

In this case, a direct quote of Count Three of the Complaint, as set forth below, speaks more eloquently for the Defendant than for the Plaintiff:

**COUNT 3: DEFENDANT'S FALSE OATH(S)**

98. The Plaintiff incorporates the allegations contained in the preceding paragraphs of this complaint as if fully set out herein.

99. Section 727(a)(4)(a) of the Code provides in applicable part that:

The court shall grant a discharge unless the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account.

11 U.S.C. § 727(a)(4)(A).

100. In or in connection with the Bankruptcy Case, the Defendant knowingly and fraudulently made one or more false oath(s). By failing to disclose Dope Ideas LLC and/or North Shore Ecom LLC, the Defendant knowingly and fraudulently made false oaths about his interests in businesses in the bankruptcy schedules he filed under oath.

101. Alternatively, the Defendant made his false oaths with a reckless disregard for the truth, which is sufficient to support the denial of the discharge under applicable precedent. *See* Keeney v. Smith (In re Keeney), 227 F3d 679, 685-86 (6th Cir. 2000).

It is obvious that the allegations set forth above are not accompanied by enough facts to support a claim that is plausible on its face, because they are not accompanied by *any* facts pertaining to the Defendant "knowingly and fraudulently" omitting the two named LLCs from his schedules, or doing so with a reckless disregard for the truth. In fact, paragraphs 100 and 101epitomize the formulaic recitation of the elements of a cause of action that *Twombly* decrees

12

"will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This Count of the Complaint, in the words of *Aishaibani,* has alleged-but has not shown, that the pleader is entitled to relief.

These faults in the Complaint are especially acute under the standards of FRBP 7009, which require fraud to be plead with specificity. Pleading a false oath based on information and belief, for example, has been held to be inadequate under Rule 9(b), unless accompanied by actual facts upon which the belief is founded. *See, SC Advisors 7, LLC v. Rudnick (In re Rudnick),* 2021 Bankr. LEXIS 872 (Bankr. N.D. Fla 2021). Here, the Trustee's statement in paragraph 94 of the Trustee's Objection, that the Defendant's omission from his schedules was "knowing" "because he must have known that he owned them" amounts only to the Trustee's belief or opinion—it does not account for inadvertence or mistake on the part of the Debtor. Absent some facts to back up the belief, this violates Rule 9(b).

The Trustee's Objection does not confront the pleading standards set forth above. The Trustee acknowledges, in paragraph 94, that he must demonstrate that the Debtor "knowingly or fraudulently" made a false oath. He then argues that he has done so simply by alleging that the Defendant owned the LLCs, failed to schedule them, and "did so knowingly because he must have known that he owned them." That is not enough under the standards adopted in *Twombly* and *Iqbal,* because there is no factual content plead (as opposed to the Trustee's speculation that "he 'must have' known that he owned them") to allow the court to draw a reasonable inference that the omission was knowing, fraudulent, or reckless. Absent some scintilla of corroborating fact, the pleadings stand as naked recitations of formulaic elements, and must be dismissed. The Trustee's contention that he has plead fraud adequately, if accepted, would convert knowing and fraudulent conduct, or reckless conduct, to a *res ipsa loquitur* standard: because an omission was made, it

22-01084-aih    Doc 18    FILED 12/14/22    ENTERED 12/14/22 19:43:57    Page 13 of 18

"must have" been fraud. Worse, it reduces the Trustee's burden under federal pleading standards to fraud by fiat—if the Trustee says "fraud," the debtor must disprove it.

Under federal law, as it exists today, it is simply not enough to say that if the Justice Department alleges it, it has facial plausibility. Count Three must accordingly be dismissed.

## COUNT FOUR

The Trustee's Objection admits that the Trustee has failed to ask, at the 341 Meeting, the continuation of that meeting, or the very lengthy 2004 Exam of the Defendant conducted by the Trustee, for the Defendant to explain any losses. See paragraph 103 of the Trustee's Objection. The Trustee's excuse for not carrying his burden in this regard is essentially that he was too busy. *See* paragraph 103 of the Trustee's Objection, and its continued pursuit of the "too busy" excuse in paragraph 104. That does not change the rule that the Complaint, itself, must allege that the Debtor previously owned specific assets, and that those assets are lost and unaccounted for. *See, e.g., Ehle v. Brien,* 208 B.R. 255, 258 (1st Cir. BAP 1997); *In re Colodner,* 147 B.R.90, 94-95 (Bankr. S.D.N.Y 1992). Here, the Trustee has failed to identify *any* asset that is missing in his Complaint, although he attempts to argue (in the Trustee's Objection) that he *meant* loan proceeds. See paragraphs 99-100 of the Trustee's Objection.

The attempt to save by re-pleading in the Trustee's Objection is unavailing. The Trustee, not for the first time, plead a formulaic recitation of the elements of Section 727(a)(5), only: "The Defendant has failed to explain satisfactorily the loss or deficiency of assets that would meet the Defendant's actual liabilities." *Complaint,* paragraph 104. That formulaic recitation is exactly what *Twombly* says "will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The unexplained failure of the Trustee to plead enough facts in his Complaint to satisfy federal pleading standards does not allow him to re-plead in the Trustee's Objection.

14

Moreover, if the Trustee meant to identify "proceeds of loans received by the Defendant's LLCs" in the Complaint, he could have done so. Here, it is clear from the bare-bones recitation set forth in paragraph 104 of the Complaint, that the Trustee understood full-well the cause of the business failure (the sudden closure of the Defendant's gyms caused by COVID and the resulting cash drain) and did not assert that the Debtor had unexplained losses of loan proceeds when the Complaint was filed. In addition, there is no asserted unexplained loss of the Debtor's assets, as opposed to the assets of the LLCs, even in the Trustee's Objection. The Trustee seemingly asserts (in the Trustee's Objection, only) that the business losses are unexplained, but that position is inconsistent with the tremendous quantity of discovery provided to the Trustee by the Defendant, including thousands of pages of documents responsive to the following numbered document requests set forth in the Trustee's letter dated October 5, 2022 to counsel for the Defendant:

1. Complete copies of all personal and corporate tax returns prepared/filed by the Defendant in 2018, 2019 and 2020, including all schedules, as well as copies of the K-1s, Forms 1098 & 1099 and W-2s used to prepare the returns.

2. Complete copies of all monthly statements and associated check registers or equivalents for all personal and corporate accounts on which the Defendant was a signatory for the years 2018, 2019, 2020, including without limitation checking, savings, and investment accounts.

3. Complete copies of monthly statements and associated check registers or equivalents for all personal and corporate accounts on which the Defendant was a signatory for the years 2018, 2019, 2020.

4. Complete copies of all monthly statements for all 'non-banking' accounts or 'alternative-banking' or cryptocurrency accounts that the Defendant held from January 1, 2018, through the present, including without limitation PayPal, CashApp, SOFI, CoinBase, Robinhood, Webull, or similar.

7. Complete copies of the books and records, including without limitation the QuickBooks along with the P&Ls, for all corporations for which the Defendant was a member/owner from January 1, 2018, through the present.

10. Copies of any and all records maintained by the Defendant that indicate the funds received and/or payments to any creditors described as a "Creditor-Investor" in the United States Trustee's complaint.

The record keeping in this case has been careful and complete, as evidenced by the failure of the Trustee to assert that any documents were missing under Section 727(a)(3). The provision of the requested documents to the Trustee was made in a complete and timely fashion, as the Trustee's Trial Attorney has reported in a previous hearing. Under these circumstances, there is no legitimate argument that excuses the failure to adhere to the pleading requirement that the Plaintiff set forth, in the Complaint, "substantial and identifiable assets that the debtor owned at a time not too far removed from the bankruptcy that are no longer available to creditors." *Strzesynski v. Devaul (In re Devaul),* 318 B.R. 824, 839 (Bankr. N.D. Ohio 2004). Only then does the burden shift to the Defendant. *See, In re Zhang,* 463 B.R. 66, 90 (Bankr.S.D. Ohio 2004).

There has been, so far, no allegation of any loss or deficiency in assets actually owned by the Debtor, at any point, as opposed to assets owned or borrowed by the LLCs. Any attempt to argue, as the Trustee does now for the first time, that proceeds of loans owned by the LLCs are in issue, is inconsistent with the phrase "to meet the debtor's liabilities" contained in Section 727(a)(5), because, as the Trustee admits in paragraph 1 of the Trustee's Objection, "The Defendant did not personally guarantee the notes." Consequently, the Trustee's Objection (which admits that the Trustee was too busy to plead correctly when the Complaint was filed) is not well-taken, and the Complaint cannot be successfully amended, because the asserted losses by the LLCs were not guaranteed by the Defendant and are not "his liabilities." Count Four must accordingly be dismissed.

## CONCLUSION

This case is not, and never was, appropriate for filing under Section 727. Count One is premised on fraud in connection with the transfer of property not made by the Debtor, but by a corporate entity owned by him. Case law (to which the Trustee makes no response or objection) demonstrates conclusively that such transfers do not support denial of a discharge under Section 727. Count two is premised on falsification of records, but all of the records are intact and available, and do not impede understanding of the Debtor's finances or transactions. The Trustee disagrees with the way those documents were notarized, but inappropriate notarization is not, and has never been, grounds for denial of discharge. Count Three asserts, without a single scintilla of corroborating facts (and, consequently, without any facial plausibility), that the inadvertent omission of two non-functioning, and therefore, non-material, LLCs from the Debtor's schedules was made knowingly and fraudulently or recklessly. Count Four asserts that the Debtor has failed to explain a loss in unspecified assets, and in so doing runs afoul of the standards for pleading in a way that is not correctable, because there is no asserted loss of assets of the Debtor (as opposed to the assets of companies that failed in the Pandemic), and because the asserted shortfall pertained to liabilities of the companies, but not the Debtor.

Caselaw considering the issue of leave to amend finds that amendment is futile in the case of assertedly fraudulent transfers made not by the debtor, but by companies owned by the debtor, because "evidence of a fraudulent transfer made by a corporation owned by the debtor cannot provide the factual basis for denial of a discharge under § 727(a)(2)(A)." *Trivedi v. Levine,* 2014 LEXIS 5161 at HN 13 (Bankr. N.D. Ill 2014). The same logic, that amendment would be futile where the position asserted by the Plaintiff is in conflict with Section 727,

22-01084-aih    Doc 18    FILED 12/14/22    ENTERED 12/14/22 19:43:57    Page 17 of 18

applies to the asserted falsification by inappropriate notarization, which is not grounds for denial of discharge under Section 727.

The elements of a violation under 11 U.S.C. § 727 must be proven by a preponderance of the evidence to merit denial of discharge. The Bankruptcy Code should be construed liberally in favor of the Debtor. *Keeney v. Smith*, 227 F.3d 679 (6th Cir. 2000). The failure to plead legally solid claims set forth in Counts One and Two of the Complaint, and the failure of the Trustee to comply with federal pleading standards in Counts Three and Four, do not justify solicitude from this Court, especially where the Debtor has complied fully with the excessive document requests made by the Trustee, as well as lengthy 341 and 2004 proceedings. Construing the Code liberally in favor of the Debtor in this instance mandates terminating this ill-conceived case now, before it consumes more time and money and judicial resources.

WHEREFORE, the Defendant respectfully requests that this Court enter an Order DISMISSING this adversary proceeding with prejudice.

Respectfully submitted,

/s/Thomas W. Coffey
Thomas W. Coffey (0046877)
Coffey Law LLC
2430 Tremont Avenue
Cleveland, OH 44113
(216) 870-8866
tcoffey@tcoffeylaw.com

*Counsel for the Debtor*

### CERTIFICATE OF SERVICE

I hereby certify that this Reply was served on Scott R. Belhorn, Trial Attorney for the U.S. Trustee, via the Court's electronic filing system on December 14, 2022.

/s/Thomas W. Coffey
Thomas W. Coffey (0046877)

22-01084-aih    Doc 18    FILED 12/14/22    ENTERED 12/14/22 19:43:57    Page 18 of 18