**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on January 13, 2023, which may be different from its entry on the record.**

**IT IS SO ORDERED.**

**Dated: January 13, 2023**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| MATTHEW M. MOTIL | ) | Case No. 22-10571 |
| Debtor. | ) | Judge Arthur I. Harris |
| | ) | |
| | ) | |
| ANDREW R. VARA | ) | Adversary Proceeding |
| United States Trustee, | ) | No. 22-1084 |
| Plaintiff. | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MATTHEW M. MOTIL | ) | |
| Defendant. | ) | |

MEMORANDUM OF OPINION[1]

On September 30, 2022, U.S. Trustee Andrew R. Vara filed the

above-captioned adversary complaint seeking to deny the debtor-defendant

---

[1] This Opinion is not intended for official publication.

Matthew M. Motil a discharge under § 727 of the Bankruptcy Code (Code). The

U.S. Trustee alleges four grounds for relief:

- prepetition transfers or concealment of property under § 727(a)(2)(A) — Count 1;

- falsification or mutilation of recorded information under § 727(a)(3) — Count 2;

- false oaths under § 727(a)(4)(A) — Count 3; and

- failure to explain a loss of assets under § 727(a)(5) — Count 4.

On November 17, 2022, the debtor filed an amended motion to dismiss the

adversary complaint in its entirety. For the reasons that follow, the Court denies

the debtor's motion to dismiss Counts 1 and 2 and gives the U.S. Trustee until

**February 3, 2023**, to file an amended complaint as to Counts 3 and 4, or the Court

will dismiss Counts 3 and 4. If an amended complaint is filed, the debtor must

respond to the amended complaint **within 21 days**.

## JURISDICTION

An action objecting to the debtor's discharge is a core proceeding under

28 U.S.C. § 157(b)(2)(J). This Court has jurisdiction over core proceedings under

28 U.S.C. §§ 157(a) and 1334 and Local General Rule 2012-7, entered on April 4,

2012, by the United States District Court for the Northern District of Ohio.

2

## PROCEDURAL HISTORY

On March 7, 2022, the debtor, Matthew M. Motil, filed a voluntary petition under Chapter 7. After obtaining two extensions of time to file a complaint objecting to the debtor's discharge, the U.S. Trustee timely commenced this adversary proceeding by filing a Complaint on September 30, 2022. On November 17, 2022, the debtor filed an amended motion to dismiss the adversary complaint in its entirety. On December 8, 2022, the U.S. Trustee filed a lengthy response opposing the motion to dismiss. On December 14, 2022, the debtor filed a reply brief, and on December 20, 2022, the Court took the motion under advisement without hearing any oral argument.

## THE COMPLAINT

The U.S. Trustee makes the following allegations in his Complaint relevant to the Court's determination.

The debtor is financially sophisticated, holds a doctorate in business administration from Walden University, and claims to be an expert in real estate. He disclosed a 100% membership/ownership interest in seventeen limited liability companies (L.L.C.s), including NS Equity Cleveland, L.L.C. (NS Equity), in his bankruptcy schedules. The debtor exercised complete control over these entities, which had no independent existence, freely transferred funds between himself and

these entities, and disregarded the legal distinction between himself and these entities, such that they functioned as alter egos of the debtor. In addition, the debtor disclosed a fifty percent interest in three additional L.L.C.s. However, the debtor failed to disclose 100% membership/ownership interests in two additional L.L.C.s: Dope Ideas, L.L.C., and North Shore Ecom L.L.C.

Both individually and through these L.L.C.s, the debtor solicited funds from at least fifty-two known individuals, the creditor-investors, who would respond to internet or social media solicitations. These loans would be secured by first liens and valid mortgages on real estate the debtor owned. Based on these representations, the creditor-investors loaned the debtor funds, but he never recorded the mortgages as promised.

Specifically, on or around September 25, 2019, the debtor executed a promissory note on behalf of NS Equity to creditor-investor Specialized Trust Company FBO Amy Horner Roth (Ms. Roth), in consideration for a $67,000 loan. He granted Ms. Roth a mortgage on real property located at 3539 West 50th Street, Cleveland OH, 44012 (the 50th Street property). The U.S. Trustee could not confirm the validity of the mortgage's notarization. Around the same date, the debtor executed a promissory note on behalf of NS Equity to Danielle Hansen (Ms. Hansen), which was not properly notarized. On or around April 24, 2020, the

4

debtor executed a promissory note and mortgage in the 50th Street property in consideration for a loan from Kenneth P. Lynch III (Mr. Lynch) of $60,000. The debtor never properly notarized the mortgage to Mr. Lynch. Although Ms. Horner, Ms. Hansen, and Mr. Lynch each believed he or she had been granted first liens on the 50th Street property, the debtor never recorded any of the mortgages as he had promised.

On or around April 8, 2021, within one year of the debtor's bankruptcy petition being filed on March 7, 2022, the debtor transferred the 50th Street property either individually or through NS Equity in exchange for $32,000. The debtor concealed or converted the proceeds of the sale from Ms. Horner, Ms. Hansen, and Mr. Lynch, and converted them for his own use, intending to hinder, delay, or defraud these three creditors. Alternatively, the defendant took action to hinder, delay or defraud creditors by a fraudulent investing scheme akin to a "Ponzi" scheme.

In late 2018 or early 2019, the debtor's assistant, Ms. Kristin Kish, obtained her notary's certification. Using this certification, the debtor created a digital document that allowed him to create authentic-looking notarizations that Ms. Kish had not actually witnessed. The debtor claimed he intentionally created the digital document with Ms. Kish's written permission. He used this digital notary

5

document to fraudulently notarize at least eleven mortgages, which Ms. Kish did not witness and for which she was not present. Ms. Kish's failure to witness or be present rendered these mortgages invalid and avoidable under Ohio law.

The debtor continued to use the digital notary document even after Ms. Kish had left her employment with the debtor and associated entities. The U.S. Trustee did not have actual knowledge of the improper notarization until the day after conducting a Rule 2004 exam, hindering the U.S. Trustee's ability to discern the debtor's financial condition. Creditors likewise suffered potential or actual losses because of the invalid mortgages.

The U.S. Trustee alleges that the debtor had failed to explain the loss or dissipation of assets because he had understated his actual liabilities, given in his schedules as $280,274. The debtor's scheduled liabilities exceeded his assets of $277,500 by $2,774. Yet the U.S. Trustee alleged the debtor's actual liabilities exceeded $5,000,000, which he had failed to explain satisfactorily. The debtor specifically failed to explain what had happened to the proceeds of the loans from the fifty-two identified investors.

The U.S. Trustee alleges four claims for relief.

In Count 1, the U.S. Trustee alleges that the debtor intended to hinder, delay, or defraud creditors under § 727(a)(2)(A) by concealing or converting the proceeds

6

of the sale of the 50th Street property by NS Equity from three creditors he had promised first mortgages on the property.

In Count 2, the U.S. Trustee alleges that the debtor intentionally falsified or mutilated the alleged mortgages under § 727(a)(3) through the use of a digital notary document, invalidating these mortgages.

In Count 3, the U.S Trustee alleges that the debtor knowingly or recklessly made false oaths under § 727(a)(4) by failing to disclose in his schedules two L.L.C.s in which he had a 100% interest.

In Court 4, the U.S. Trustee alleges that the debtor failed to satisfactorily explain the loss or diminution of the debtor's assets to meet liabilities under § 727(a)(5).

## RULE 12(B)(6) STANDARD

The debtor moves to dismiss under Civil Rule 12(b)(6), made applicable here by Bankruptcy Rule 7012. Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012. The debtor further asserts that dismissal under Rule 12(b)(6) is appropriate for failure to meet the stricter standard of pleading fraud with particularity under Civil Rule 9(b) and Bankruptcy Rule 7009. The U.S. Trustee, however, construed the motion as one for judgment on the pleadings. The same standards apply to both motions to dismiss for failure to state a claim and motions for judgments on the

7

pleadings.  *See Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007).  However, a

party may only move for judgment on the pleadings after the pleadings are closed.

Fed. R. Civ. P. 12(c).  Here, the pleadings have not been closed because the debtor

has yet to file an answer.  Therefore, the Court will construe the debtor's motion as

a motion to dismiss for failure to state a claim rather than a motion for judgment on

the pleadings.

> As the Sixth Circuit stated in *Fair Finance*:

> "A claim survives [a Rule 12(b)(6) motion to dismiss for failure to state
> a claim] if its '[f]actual allegations [are] enough to raise a right to relief
> above the speculative level on the assumption that all of the complaint's
> allegations are true.' "  *Jones v. City of Cincinnati*, 521 F.3d 555, 559
> (6th Cir. 2008) (alteration in original) (quoting *Bell Atl. Corp. v.
> Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)).

*Bash v. Textron Fin. Corp. (In re Fair Fin.)*, 834 F.3d 651, 665 (6th Cir. 2016).  To

survive a motion to dismiss a plaintiff must plead "factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.' "  *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  "Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice."  *Id.*  Additionally, "only a complaint

that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 679.

> "[A]s a general rule, matters outside the pleadings may not be
> considered in ruling on a 12(b)(6) motion to dismiss unless the motion
> is converted to one for summary judgment under Fed. R. Civ. P. 56."

8

> *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999)
> (quoting *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997)),
> abrogated on other grounds by *Swierkiewicz v. Sorema N.A.*, 534 U.S.
> 506, 122 S. Ct. 992 (2002). However, "when a document is referred to
> in the pleadings and is integral to the claims, it may be considered
> without converting a motion to dismiss into one for summary
> judgment." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508
> F.3d 327, 335-36 (6th Cir. 2007).

*Fair Finance*, 834 F.3d at 656–57 n.1. Here, the Court intends to treat the debtor's

motion as one to dismiss for failure to state a claim and not as a motion for

summary judgment under Civil Rule 12(d) and Bankruptcy Rule 7012.

Civil Rule 9(b), made applicable here by Bankruptcy Rule 7009, requires a

party to "state with particularity the circumstances constituting fraud. . . ." Fed. R.

Civ. P. 9; Fed. R. Bankr. P. 7009. To survive a motion to dismiss, a plaintiff must

plead, at a minimum, the time, place, and contents of the allegedly fraudulent

activity under Civil Rule 9(b). *Rautu v. U.S. Bank*, 557 F. App'x 411, 414 (6th

Cir. 2014) (citing *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir.

1984)). Plaintiffs should try to identify the fraudulent statement and explain why it

is fraudulent. *Id.* (citing *Frank v. Dana Corp.*, 547 F.3d 564, 570) (6th Cir. 2008)).

Plaintiffs may allege scienter generally, and circumstantial evidence is sufficient to

infer intent. *See* Fed. R. Civ. P. 9(b); *Keeney v. Smith (In re Keeney)*, 227 F.3d

679, 683–84 (6th Cir. 2000).

DISCUSSION

The discharge constitutes the heart of the "fresh start" policy embodied by the Code, and exceptions to discharge, as extraordinary remedies, contravene this policy. *McDermott v. Kerr (In re Kerr)*, Chap. 7 Case No. 15-30531, Adv. No. 15-3085, 2017 WL 3880875, at *8 (Bankr. N.D. Ohio Aug. 30, 2017) (Gustafson, J.) (citing *Yoppolo v. Sayre (In re Sayre)*, 321 B.R. 424, 427 (Bankr. N.D. Ohio 2004)). As a result, the party seeking denial of discharge must prove each element under § 727 by a preponderance of the evidence. *See* Fed. R. Bankr. P. 4005; *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *Keeney*, 227 F.3d at 683; *Barclays/Am. Bus. Credit, Inc. v. Adams (In re Adams)*, 31 F.3d 389, 393–94 (6th Cir. 1994); *cert. denied*, 513 U.S. 1111, 115 S. Ct. 903. The Code, including actions to deny discharge, should be construed liberally in favor of the debtor. *Vara v. McDonald (In re McDonald)*, 29 F.4th 817, 822 (6th Cir. 2022) (citing *Keeney*, 227 F.3d at 683).

A. PREPETITION TRANSFERS OR CONCEALMENT OF PROPERTY<br>UNDER § 727(A)(2)(A) — COUNT 1

1. Property of the Debtor and the Alter Ego Theory

Section 727(a)(2)(A) denies a debtor a discharge when

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of the property under this title has transferred, removed, destroyed, mutilated, or concealed, or has

10

permitted to be transferred, removed, destroyed, mutilated, or concealed— (A) property of the debtor, within one year before the date of the filing of the petition. . . .

11 U.S.C. § 727(a)(2)(A). The Sixth Circuit has identified two elements that a plaintiff must prove under this subsection: "1) a disposition of property, such as concealment, and 2) 'a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act disposing of the property.' " *Keeney*, 227 F.3d at 683 (quoting *Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240 (9th Cir. 1997)). The property at issue must belong to the debtor and must be transferred within one year of filing for bankruptcy. *Kerr*, 2017 WL 3880875, at *9. Courts consider the U.S. Trustee an officer of the estate charged with custody of estate property under the Code. *See id.* (collecting cases).

In his motion to dismiss, the debtor argues that, because the U.S. Trustee alleged a transfer of property belonging only to an L.L.C. under the debtor's control, not a transfer of property owned by the debtor directly, that such property did not constitute "property of the debtor" under § 727(a)(2)(A). As the debtor correctly notes, the general rule is that a corporate entity owns the assets of that entity, even if the debtor completely owns and controls the entity. *See, e.g.*, *Hulsing Hotels, Tenn., Inc. v. Steffner (In re Steffner)*, 479 B.R. 746, 761 (Bankr. E.D. Tenn. 2012) ("It is black-letter law that the property of a corporation or

11

limited liability company belongs to that entity, even if the corporation has only one shareholder or member."). Thus, without more, the property of an L.L.C., even one completely owned by the debtor, cannot constitute the debtor's property for purposes of § 727(a)(2)(A). Yet the U.S. Trustee alleged that NS Equity constituted an alter ego of the debtor, and so the property of NS Equity was property of the debtor.

Courts disagree as to whether the debtor's concealment of property owned by a debtor's alter ego states a claim under § 727(a)(2). And there is no binding precedent from the Sixth Circuit Court of Appeals, although some courts seem to find support for including the concealment of property of a debtor's alter ego under § 727(a)(2) in the Sixth Circuit's decision in *Adams*. 31 F.3d at 394. In *Adams*, the debtors deposited accounts receivable into a wholly owned corporation's operating account instead of a "dominion account" from which only the creditor could withdraw funds, despite their earlier promise. *Id.* at 391, 394. The debtors also used and transferred postpetition cash collateral. *Id.* at 394.

In understanding the Sixth Circuit's holding in *Adams*, it is important to note that Adams Plywood, the wholly owned corporation, and Edsel and Frances Adams, each filed for bankruptcy. Adams Plywood filed under Chapter 11 on August 22, 1984, and Edsel and Frances Adams filed under Chapter 7 on

12

October 9, 1984.  *Id.* at 391–92.  Because Adams Plywood fell under the definition

of an "insider," through the operation of § 727(a)(7) there was no need for the

Sixth Circuit to determine whether property of Adams Plywood constituted

property of the Adamses under an alter ego theory.  *Id.* at 394 n.2 ("[T]he

bankruptcy court was correct in considering the Adams Plywood accounts

receivables to be property of the Adamses under Section 727(a)(2), by

incorporation through Section 727(a)(7).").

In the present case, unlike *Adams*, none of the L.L.C.s owned by the debtor

are themselves in bankruptcy.  Thus, only if it is appropriate to consider property

of the L.L.C.s to be property of the debtor under an alter ego theory, will the

transfer or concealment of such property state claim under § 727(a)(2)(A).

A number of courts have applied state law alter ego theories to § 727(a)(2).

*See, e.g.*, *Villa Oaks, LLC v. Shakir (In re Shakir)*, 623 B.R. 532, 539–40 (Bankr.

N.D. Ill. 2021); *Patriot Grp., LLC v. Fustolo (In re Fustolo)*, 597 B.R. 1, 47–48

(Bankr. D. Mass. 2019); *U.S. Trustee v. Zhang (In re Zhang)*, 463 B.R. 66, 79–82

(Bankr. S.D. Ohio 2012); and *Shapiro v. Gherman (In re Gherman)*, 103 B.R. 326,

331 (Bankr. S.D. Fla. 1989).  *See also* 6 *Collier on Bankruptcy* ¶ 727.02[1] n.1

(16th ed. 2023) (courts consider property of a corporation controlled by the debtor

to be property of the debtor). Some of the arguments in favor of this view are:

13

- the nature of bankruptcy courts as courts of equity;

- the application or extension of existing precedent; and

- the fact that transfer under § 101(54)(D) includes indirect transfers, such as those affecting a debtor's interest in a wholly owned L.L.C.

On the other hand, a number of other courts have declined to read § 727(a)(2) as extending to transfers or concealment of property of entities other than the debtor. *See, e.g.*, *SC Advisors 7, LLC v. Rudnick (In re Rudnick)*, Chap. 7 Case No. 20-40124, Adv. No. 20-04013, 2021 WL 1347548, *4 (Bankr. N.D. Fla. Mar. 3, 2021); *Trivedi v. Levine (In re Levine)*, Chap. 7 Case No. 14 B 10740, Adv. No. 13 A 00461, 2014 WL 7187007, *3–5 (Bankr. N.D. Ill. Dec. 16, 2014); and *BankUnited, N.A. v. Lehmann (In re Lehmann)*, 511 B.R. 729, 735 (Bankr. M.D. Pa. 2014). Some of the arguments in favor of this narrower reading of § 727(a)(2) are:

- the lack of textual support for alter ego theories;

- the suggestion by the statute's language that the debtor's interest in the property must be direct;

- the availability of other remedies;

- the application of the statute only to property already in the debtor's estate; and

- the limitation of a bankruptcy court's equitable powers by the text of the Code.

14

The divisiveness of the issue can be seen in how two bankruptcy judges in the same federal district, the Northern District of Illinois, have reached different conclusions. *Compare Levine*, 2014 WL 7187007, at *3–5 (arguing that alter ego theories are incompatible with the text of § 727(a)(2)) *with Shakir*, 623 B.R. at 539–40 (arguing alter ego theories are required by Seventh Circuit precedent and are consistent with the text of § 727(a)(2)(A)).

The undersigned judge believes that the better reading of § 727(a)(2) is that "property of the debtor" is limited to property that actually belongs to the debtor and not to property that under equitable principles could at some point be determined to be property of the debtor. Equitable concerns about a debtor getting away with fraudulent activity could well serve as red herrings given the availability of other penalties, such as criminal liability, avoidance actions, and the nondischargeability of certain debts under § 523(a)(2) and (a)(19).

Although the undersigned judge believes that this narrower reading of § 727(a)(2) is the better one, the Court is reluctant to dismiss Count 1 at the pleading stage. A reviewing Court may well disagree, and the premature dismissal of this claim might well delay the final resolution of all claims in this adversary proceeding as well as related adversary proceedings within the debtor's overall bankruptcy case. *Cf. Bash v. Textron Fin. Corp.*, 483 B.R. 630 (N.D. Ohio 2012),

15

*aff'd in part and rev'd in part by Fair Fin.*, 834 F.3d at 651; *Textron Fin. Co. v. Bash*, Case No. 5:12 CV 987, 2019 WL 3290257 (N.D. Ohio 2019), *aff'd, In re Fair Fin. Co.*, 13 F.4th 547 (6th Cir. 2021) (chapter 7 trustee's claims against defendant Textron were dismissed in 2012, sat dormant until all claims as to all parties became final in 2015, were reinstated by the Sixth Circuit in 2016, with a jury trial finding in favor of Textron in 2020, that the Sixth Circuit affirmed in 2021). In addition, should the claims in this proceeding not be ready for trial before the undersigned judge's impending retirement, a successor judge would be free to revisit this or any other issues pursuant to Civil Rule 54(b) and Bankruptcy Rule 7054 (providing that non-final judgments "may be revised at any time" before the entry of final judgment).

Despite the Court's reluctance to apply alter ego theories to claims under § 727(a)(2), for the above reasons, the Court declines to dismiss Count 1 on this basis at the pleading stage.

### 2. Pleading with Particularity under Civil Rule 9(b)

Next, the debtor argues that Count 1 must be dismissed because the U.S. Trustee failed to plead fraud with the required specificity under Civil Rule 9(b). For example, there is no evidence that $32,000 was not a fair market price for the sale of the West 50th Street property. And the U.S. Trustee failed to

16

identify any badges of fraud. The transfer of the 50th Street property, on which the U.S. Trustee based the entirety of Count 1, was recorded in the appropriate office, so that the debtor could not have had the intent to conceal the transfer, the defendant argues. Finally, the allegations regarding the alleged Ponzi scheme are "woefully unsupported." (Docket No. 10, p. 6).

The standard for pleading fraud has been discussed above. Here, the U.S. Trustee made the following allegations. The debtor entered into loan agreements with Ms. Roth and Ms. Hansen on or around September 25, 2019, and with Mr. Lynch on or around April 24, 2020, all concerning the 50th Street property. Moreover, the mortgages to Mr. Lynch and Ms. Hansen were improperly notarized, and the debtor did not record any of the three mortgages as promised. The debtor concealed or converted the proceeds of the sale of the property, which occurred on or around April 28, 2021, from the three investor-creditors. In addition, the debtor received investments from at least forty-nine other known creditor-investors, whom he recruited from social media communications and websites.

Thus, the U.S. Trustee has identified the appropriate time, medium (electronic communications) and content of the alleged misrepresentations, as required by the Sixth Circuit. There is no requirement to plead badges of fraud, or

17

to allege that the transfer was made for inadequate consideration. The debtor's alleged failure to record the mortgages and his mutually incompatible promises provide sufficient circumstantial evidence from which a reasonable factfinder could infer the debtor's intent to defraud creditors. The U.S. Trustee has also identified the statements at issue and made plausible allegations concerning why they are fraudulent. The apparent recording of the transfer of the 50th Street property is also not decisive. Real estate transactions can be concealed for purposes of § 727(a)(2) even if the transactions are reflected in public records. *See Moran v. Wunderlich (In re Wunderlich)*, Chap. 7 Case No. 05-15295, Adv. No. 06-1183, 2007 WL 295597, at *2 (Bankr. D.N.H. Jan. 26, 2007) (quoting *Keeney*, 227 F.3d at 684) (emphasis in original) (noting with reference to the continued concealment doctrine that " 'a transfer made *and recorded* more than one year prior to filing may serve as evidence of the requisite act of concealment' under section 727(a)(2)(A)"). Finally, the allegation that the debtor received funds from forty-nine other investors, when coupled with allegations of the debtor's granting multiple first liens on the same real estate, renders the allegation of a Ponzi scheme sufficiently particularized to survive a motion to dismiss. Therefore, the U.S. Trustee has made allegations sufficient to meet the requirements of Civil Rule 9(b) with respect to Count 1.

18

### 3. Facial Plausibility under Civil Rule 8, *Twombly*, and *Iqbal*

Finally, the debtor argues that Count 1 must be dismissed because the U.S. Trustee's allegations are not plausible enough to survive under Civil Rule 8, *Twombly*, and *Iqbal*. In support of this, the debtor essentially contends that Count 1, read in isolation, pled insufficient facts. This is not the case. As discussed above, the U.S. Trustee has alleged that the debtor actively solicited investor funds, provided incompatible promissory notes memorializing investors' interests, and deceptively promised three investors first liens on the same property. The debtor failed to provide any of the three investors any of the proceeds of the transferred property when it sold. The Court thus concludes that the U.S. Trustee has stated a plausible claim under Civil Rule 8, *Twombly*, and *Iqbal*.

The cases the debtor cites do not change the analysis. In *Alshaibani v. Litton Loan Servicing, L.P.*, 528 F. App'x 462 (6th Cir. 2013), the Court upheld a district court's dismissal of the plaintiffs' claims because the plaintiffs merely alleged a servicer had misapplied their payments, without supporting factual allegations. Here, the U.S. Trustee has identified a specific disposition of alleged property of the estate and made factual allegations sufficient to infer the required scienter. Similarly, unlike the inadequate complaint rejected in *Bell v. Zurich Ins. Co.*, Case 3:16 CV 894, 2016 WL 5118294 (N.D. Ohio Sept. 21, 2016), the

19

U.S. Trustee has provided enough detail concerning the time, manner, relevant actors, and factual bases for his allegations to render them plausible.

In sum, although the Court remains skeptical as to whether the U.S. Trustee ultimately will prevail on an alter ego theory under § 727(a)(2), the U.S. Trustee has made allegations sufficient to state a claim under § 727(a)(2), and the debtor's motion to dismiss Count 1 is denied.

## B. FALSIFICATION OR MUTILATION OF RECORDED INFORMATION UNDER § 727(A)(3)—COUNT 2

Under § 727(a)(3), the Court may deny a debtor's discharge if

the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727.  Ascertain means "to fix; to render certain or definite; to estimate and determine; to clear of doubt and obscurity." *Ascertain*, *Black's Law Dictionary* (4th rev. ed. 1968).  In line with this meaning, the purpose of § 723(a)(3) is "to provide creditors 'with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present.' " *Turoczy Bonding Co. v. Strbac (In re Strbac)*, 235 B.R. 880, 882 (B.A.P. 6th Cir. 1999) (quoting *In re Martin*, 141 B.R. 986, 995 (Bankr. N.D. Ill. 1992)).  *See also In re*

20

*Helfgott*, 245 F. 358, 360 (S.D.N.Y. 1917) (Learned Hand, J.) (applying a predecessor statute to § 727(a)(3)). "The making of false entries in the books is, of course, a failure to keep true books of the most glaring sort, and only from true books can the bankrupt's financial condition be ascertained." *Id.*

For purposes of Count 2, the pertinent language of § 727 could be stated as follows:

> The Court shall grant the debtor a discharge, unless . . . the debtor has . . . mutilated [or] falsified . . . any recorded information . . . from which the debtor's financial condition or business transactions might be ascertained, unless such act . . . was justified under all of the circumstances of the case.

The text of § 727(a)(3) leaves open some potential ambiguities. For example, "might be ascertained" by whom? And when? And what if other records exist from which the debtor's financial condition or business transactions at issue might be ascertained? There appears to be no binding precedent from the Sixth Circuit to answer these questions, although there are certainly plenty of published decisions that provide some direction, albeit sometimes conflicting directions.

As to the issue of whether the falsification of the recorded information must make it *impossible* to ascertain the debtor's financial condition or business transactions to state a claim under § 727(a)(3), it appears that virtually every court of appeals to address this question has answered "yes," at least for the more run of

21

the mill situation where the debtor has "failed to keep or preserve" recorded information. *See Berger & Assocs. Att'ys, P.C. v. Kran (In re Kran)*, 760 F.3d 206, 210–11 (2d Cir. 2014); *Meridian Bank v. Alten*, 958 F.2d 1226, 1232 (3d Cir. 1992); *Mercantile Peninsula Bank v. French (In re French)*, 499 F.3d 345, 354 (4th Cir. 2007); *The Cadle Co. v. Duncan (In re Duncan)*, 562 F.3d 688, 697 (5th Cir. 2009); *Lee Supply Corp. v. Agnew (In re Agnew)*, 818 F.2d 1284, 1290 (7th Cir. 1987); *Snyder v. Dykes (In re Dykes)*, 954 F.3d 1157, 1162–63 (8th Cir. 2020); *Caneva v. Sun Cmtys. Operating Ltd. P'ship (In re Caneva)*, 550 F.3d 755, 761 (9th Cir. 2008); *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1295 (10th Cir. 1997).

As to the issue of *when* the debtor's financial condition or business transactions might be ascertained, the debtor cites to *Randolph v. Fry (In re Fry)*, Chap. 7 Case No. 20-20641-L; Adv. No. 20-00098, 2022 Bankr. LEXIS 251 (Bankr. W.D. Tenn. Jan. 26, 2022). In *Fry*, the bankruptcy court expressly held that the falsification must make it impossible to ascertain the debtor's financial condition or business transactions "*now*, in connection with their bankruptcy case." *Id.* at *19 (italics in original). Under this interpretation, § 727(a)(3) provides no remedy to creditors who were duped by the debtor's prepetition falsification of records so long as, when the bankruptcy case is later filed, records exist from

22

which the debtor's financial condition and business transactions at issue might be ascertained. On the other hand, cases cited by the U.S. Trustee appear to leave open the possibility of a claim under § 727(a)(3) based upon the debtor's prepetition falsification of records from which the debtor's creditors might otherwise have ascertained the true nature of the debtor's financial condition and business transactions at the time of those transactions. *See Simu v. Carvalho (In re Carvalho)*, Chap. 7 No. 15-00646; Adv. No. 16-10001, 2016 WL 2930466, at *3 (Bankr. D.D.C. May 13, 2016), *on reconsideration in part*, 2016 WL 6794788 (Bankr. D.D.C. Nov. 15, 2016) (finding plaintiff established a prima facie case to deny discharge for a debtor who submitted a false tax return and financial statements); *Phillips v. Bourget (In re Bourget)*, 176 B.R. 25, 27–29 (Bankr. C.D. Cal. 1994) (denying a discharge under § 727(a)(3) because the debtor falsified invoices to receive payment more quickly, even though he did not receive more than the contractual amount).

For purposes of the debtor's motion to dismiss, the Court will follow the elements of § 727(a)(3) outlined by Judge Whipple in *Strzesynski v. Devaul (In re Devaul)*, 318 B.R. 824, 833 (Bankr. N.D. Ohio 2004). According to *Devaul*, the plaintiff bears the initial burden of (1) demonstrating the debtor's business or general financial condition and the types of transactions likely to be at issue;

23

(2) identifying the information concealed, destroyed, falsified, or not kept by the debtor; and (3) showing how the absent or falsified information "might" enable the debtor's financial conditions or transactions to be understood in the case. 318 B.R. at 833.

Due to the fact-specific nature of the investigation, trial courts enjoy " 'wide discretion' " in determining whether the plaintiff has established a prima facie case. *Kandel*, 2015 WL 1207014, at \*5 (quoting *Dolin v. N. Petrochemical Co. (In re Dolin)*, 799 F.2d 252, 253 (6th Cir. 1986)). Once the plaintiff has met this burden, the burden shifts to the defendant to show how the lack of the records was "justified under all the circumstances of the case." *Id.* at \*6 (citing § 727(a)(3)).

Unlike § 727(a)(2), the plain text of § 727(a)(3) does not require that financial records relate only to property of the debtor. Rather, "[a] lack of business records relating to a company substantially intertwined with a debtor may provide the basis for the denial of a debtor's individual discharge under § 727(a)(3)." *Id.* at \*9. Especially for closely held corporate entities, where the financial condition of the entity and the debtor is closely connected, § 723(a)(3) should not be artificially limited to the debtor's records. *See Bavely v. Daniels (In re Daniels)*, 641 B.R. 165, 184–85 (Bankr. S.D. Ohio 2022).

24

The complaint alleges that the debtor "falsified" or "mutilated" eleven unrecorded mortgages by improper notarization. Ms. Kish, the notary in question, "was not present and did not witness" any of the instances of the defendant digitally signing the mortgages. (Docket No. 1, p. 11). Even after Ms. Kish left the debtor's employment, the debtor continued to use the digital copy of her notary certification. According to the U.S. Trustee, Ms. Kish's failure to be present or witness the debtor's signatures invalidates the mortgages under Ohio law, thus "mutilating" and "falsifying" them and hindering the ability of creditors and the U.S. Trustee to understand these transactions under § 727(a)(3). The debtor responds that, even if the U.S. Trustee's allegations were true, any allegedly improper notarization would not render it impossible to discern the debtor's financial condition or the nature of the debtor's transactions. Essentially, the dispute between the U.S. Trustee and the debtor amounts to whether the allegedly improper notarization falsified and mutilated the mortgages by invalidating them, thus preventing the U.S. Trustee and creditors from understanding the transactions at issue.

Here, it is unclear whether the use of the digital notary document invalidates the mortgages under Ohio law. *See Zaptocky v. Chase Manhattan Bank (In re Zaptocky)*, 250 F.3d 1020, 1024–25 (6th Cir. 2001) (discussing the proper

25

execution of mortgages under Ohio law). In Ohio, a mortgagor can either sign in the presence of a notary public (as well as other officials) or acknowledge the signature in the notary's presence. O.R.C. §§ 147.153; 5301.01; *Lasalle Bank N.A. v. Zapata*, 921 N.E.2d 1072, 1076 (Ohio Ct. App. 2009). A defective or missing acknowledgement does not invalidate an instrument but proves a transfer was sufficiently executed; thus, proper acknowledgment is a prerequisite for recording. *See WWSD, LLC v. Woods*, 188 N.E.3d 244, 256 (Ohio Ct. App. 2022). Defective mortgages remain valid between the parties unless a party alleges fraud, which must be alleged with clear and convincing evidence. *Zapata*, 921 N.E.2d at 1075; *WWSD*, 188 N.E.3d at 256; *JPMorgan Chase Bank, N.A. v. Parker*, Case No. 2014-CA-17, 2014 WL 7463142, at *3 (Ohio Ct. App. Dec. 31, 2014). Thus, the mortgages may be valid between the parties until challenged, but their ultimate validity remains unclear.

Even if the validity of the mortgages is debatable, the Court believes that this issue may be irrelevant for purposes of the U.S. Trustee's claim under § 727(a)(3) in Count 2. If the debtor affixed a false digital notary designation on a mortgage and sent it to one or more investors, it's not just the falsification of the *mortgage* that's actionable under § 727(a)(3) — it's the falsification of the purported notary designation itself. If the debtor sent a prospectus or other

26

document and falsely represented that his company's records had been audited by a prestigious accounting firm, the false seal of approval regarding the auditing of his company's records could constitute the falsification of recorded information from which the debtor's financial condition or business transactions might be ascertained. Similarly, affixing a false digital notary designation could be deemed the falsification of recorded information from which the debtor's financial condition or business transactions might be ascertained.

Another illustration of possible falsification of recorded information that might state a claim under §727(a)(3) (which no one alleges occurred here), would be the affixing of a false recording stamp on a mortgage purporting to show an actual recording of a mortgage with the county recorder, when in fact the mortgage has never been recorded with the county recorder. Under such a scenario, the false recording stamp would presumably not invalidate the underlying mortgage; however, if delivered to investors, the falsified records would leave investors with the mistaken impression that their mortgages were actually recorded with the county recorder.

If, as alleged in the complaint, (1) the debtor actually affixed a notary designation which falsely represented that the mortgages had been property notarized when they had not, and (2) knowing whether the mortgages were

27

properly notarized was something from which the debtor's financial condition or business transactions might be ascertained, the U.S. Trustee's Count 2 would state a claim under § 727(a)(3).  Even if these elements were established, the debtor would still have the opportunity to show that "such act or failure to act was justified under all of the circumstances of the case."  11 U.S.C. § 727(a)(3).

It remains to be seen whether the debtor's alleged use of this false notarization was simply a matter of expedience or something more nefarious.

As noted above, it also remains to be seen whether the debtor's falsification of notary designations on mortgages is actionable under § 727(a)(3) if, after the filing of the bankruptcy, the trustee and creditors could ascertain what the debtor had been doing with these mortgage transactions, which were never recorded.

As with Count 1, the Court is reluctant to dismiss Count 2 at the pleading stage.  Nevertheless, the Court is skeptical that the U.S. Trustee will ultimately prevail on a § 727(a)(3) claim based on the debtor's false notarization of mortgages, which were apparently never recorded with the county recorder.  Moreover, the U.S. Trustee's likelihood of success would be further eroded if the Court were (1) to follow the lead of virtually all other circuit courts of appeals and require the U.S. Trustee to demonstrate that the debtor's alleged falsification of records made it impossible to ascertain the debtor's financial condition and

28

material business transactions, and (2) to hold that the time of such ascertainment be *after* the debtor's bankruptcy case had been filed.

Therefore, the debtor's motion to dismiss Count 2 is denied.

### C. FALSE OATHS UNDER § 727(A)(4)(A) — COUNT 3

Section 724(a)(4)(A) denies the debtor a discharge if "the debtor knowingly and fraudulently, or in connection with the case— (A) made a false oath or account." 11 U.S.C. § 727(a)(4)(A). Under this subsection, a plaintiff must sufficiently allege: "1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case." *Keeney*, 227 F.3d at 685. The purpose of this provision is to ensure the U.S. Trustee and creditors have access to reliable information without the expense of investigation. *McDermott v. Perez (In re Perez)*, Case No. 18-8036, 2019 WL 7341580, at *7 (B.A.P. 6th Cir. Dec. 30, 2019) (citation omitted).

Statements made in bankruptcy schedules, in the Statement of Financial Affairs, and at the meeting of creditors are all under oath. *McDermott v. Capra (In re Capra)*, Chap. 7 Case No. 15-15907, Adv. No. 16-1010, 2016 WL 5106994, at *6 (Bankr. N.D. Ohio Sept. 19, 2016) (Harris, J.). The falsity of a statement is a question of fact. *Keeney*, 227 F.3d at 685. A statement is material if it " 'bears a

29

relationship to the [debtor's] business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of property.' " *Id.* at 686 (quoting *Beauboeuf v. Beauboeuf (In re Beauboeuf)*, 966 F.2d 174, 178 (5th Cir. 1992)).

The most frequently contested issues under § 727(a)(4)(A) are the debtor's knowledge the statement was false and the debtor's fraudulent intent. *Capra*, 2016 WL 5106994, at *7 (citation omitted). A debtor knows that a statement is false when, despite knowing the truth, the debtor intentionally contradicts it. *Myka Ventures, Inc. v. Christian (In re Christian)*, 615 B.R. 240, 247 (Bankr. M.D. Tenn. 2020). For example, a court denied a discharge under § 727(a)(4)(A) for debtors who made sworn statements at the meeting of creditors that they had read and were familiar with their bankruptcy schedules but claimed during trial and on appeal never to have reviewed them. *Church Joint Venture, L.P. v. Blasingame (In re Blasingame)*, 559 B.R. 692, 697–98 (B.A.P. 6th Cir. 2016).

A factfinder may infer intent to deceive from the totality of circumstances in a case. *Keeney*, 227 F3d at 686 (citing *Williamson v. Fireman's Fund Ins. Co. (In re Williamson)*, 828 F.2d 249, 252 (4th Cir. 1987)). A debtor's recklessness as to whether a statement is true satisfies the intent requirement. *Id.* While a pattern of omissions or false statements can give rise to an inference of intent to deceive,

30

generally a small number of mistakes made out of ignorance or error is insufficient to infer such intent. *Christian*, 615 B.R. at 248 (citations omitted). A debtor who fails to provide plausible explanations for misstatements or omissions makes it more likely a factfinder will infer intent to deceive. *Id.* (citing *U.S. Trustee v. Halishak (In re Halishak)*, 337 B.R. 620, 629–30 (Bankr. N.D. Ohio 2005)).

To deny the debtor a discharge under § 727(a)(4)(A), the U.S. Trustee alleges that the debtor failed to disclose his interests in two L.L.C.s, either with intent to deceive or with reckless disregard for the truth. The debtor responds that the U.S. Trustee has not provided a motive or improper purpose for failing to schedule these two L.L.C.s or made any allegations showing the failure to disclose the entities was anything other than an oversight.

Here, the U.S. Trustee plausibly alleged that omission of the L.L.C.s was under oath and that this omission created a false impression that the debtor completely disclosed his assets. The U.S. Trustee contends the two L.L.C.s relate to the debtor's business interests, and so the omission is material. The debtor presumably knew that he owned the L.L.C.s, and so was aware that not listing them was false.

Yet there is no support for an inference that the debtor possessed the required intent to deceive. The debtor disclosed seventeen L.L.C.s in which he had

31

a direct interest, as well as three in which he held a 50% interest, but failed to disclose two wholly owned L.L.C.s.  The U.S. Trustee provides no explanation for why the debtor would intentionally or recklessly fail to disclose these two entities. Nor does the U.S. Trustee point to a larger pattern of omissions or false representations made in bankruptcy schedules, in the Statement of Financial Affairs, or at the meeting of creditors to justify treating the omission of these two entities as intentional or reckless.  For example, the complaint is devoid of any information about these two entities that would make the debtor want to keep their existence hidden.  In short, the U.S. Trustee's Complaint offers no plausible basis for this omission being anything more than oversight.  Isolated mistakes are not enough to deny debtors a discharge under § 727(a)(4)(A).  Therefore, the U.S. Trustee's allegations concerning § 727(a)(4)(A) lack plausibility.  Absent the filing of an amended complaint that contains allegations from which the Court could plausibly find that this omission was more than just an oversight, the Court will grant the debtor's motion to dismiss Count 3.

### D. FAILURE TO EXPLAIN A LOSS OF ASSETS UNDER § 727(A)(5) — COUNT 4.

Under § 727(a)(5), a Court may deny a debtor a discharge if "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's

32

liabilities." Denial of discharge under § 725(a)(5) is closely related to denial of discharge under § 725(a)(3). *McDermott v. Roller (In re Roller)*, Chap. 7 Case No. 12-61145, Adv. No. 13-6050, 2014 WL 644590, at *15 (Bankr. N.D. Ohio Feb. 19, 2014) (Kendig, J.). *See also Bertucci v. Elian (In re Elian)*, Chap. 7 Case No. 10-49482, Adv. No. 11-2088, 2014 WL 2976295, at *7 (Bankr. D.N.J. July 1, 2014) ("Section 723(a)(5) is designed to work in tandem with Section 727(a)(3) to foster the same process of investigation and disclosure promoted in § 727(a)(3).")

Under this statute, courts employ a burden-shifting framework, under which the party seeking to deny discharge must "identify assets that the debtor owned at one time and subsequently claims to no longer possess." *McDonald*, 29 F.4th at 822 (citing *Devaul*, 318 B.R. at 840). The assets should be " 'substantial and identifiable,' " but the statute contains no defined lookback period, which must be determined according to the circumstances of each case. *Id.* (quoting *Devaul*, 318 B.R. at 839).

Next, the debtor then bears the burden of providing "a satisfactory explanation for the loss of the identified assets." *Id.* Most basically, the party seeking to deny discharge must ask the debtor to explain the loss of assets. *First Nat'l Bank of Pa. v. Osborne (In re Osborne)*, Chap. 7 Case No. 17-17361, Adv. No. 20-1005, 2022 WL 1436372, at *4 (Bankr. N.D. Ohio May 5, 2022) (Harris,

33

J.). The explanation must be "reasonable under the circumstances," *Zhang*, 463 B.R. at 90, and "must contain more than vague guesses and conclusory statements." *McDonald*, 29 F.4th at 823. The issue is not whether the loss of assets is proper, but merely whether the explanation provides a satisfactory account of where the assets went. *Zhang*, 463 B.R. at 90. And the Sixth Circuit has taken the sophistication and financial experience of a debtor into account when determining whether an explanation is reasonable. *McDonald*, 29 F.4th at 823. The failure to provide a satisfactory explanation is dispositive; the statute contains no intent requirement. *Id.*

The U.S. Trustee alleges that the debtor scheduled liabilities of $280,274, against assets of $277,500, for a difference of $2,774. However, the debtor's actual liabilities exceed $5,000,000, and the defendant has failed to explain the loss of assets to explain such liabilities. Specifically, the U.S. Trustee alleges that the debtor has failed to explain what happened to the loan proceeds from the fifty-two investors identified in complaint.

In response, the debtor argues that the U.S. Trustee should have asked the debtor to explain a loss in value at the meeting of creditors and that the U.S. Trustee failed to identify a specific asset that is missing or has decreased in value.

34

The debtor is correct that the U.S. Trustee has failed to identify any specific asset that is missing or has diminished in value. For example, though the U.S. Trustee alleged that Ms. Roth loaned an L.L.C. owned by the debtor $67,000 in consideration for a mortgage on the 50th Street property, and Mr. Lynch lent the debtor's L.L.C. $60,000 for the same purpose, he did not identify the proceeds of these specific loans as assets whose loss the debtor has failed to explain. Because the debtor apparently guaranteed many of the debts incurred by his L.L.C.s, as his bankruptcy schedules demonstrate (Case No. 22-10571, Docket No. 1, pp. 21–46), these transactions are potentially relevant here. Similarly, the U.S. Trustee did not identify specific sums lent by other plaintiffs to the debtor's L.L.C.s as relevant under Count 4. But by not offering any specifics, the U.S. Trustee is essentially asking the debtor to justify, and the Court to evaluate, the result of fifty-two investors' transactions with the debtor. Yet because the U.S. Trustee admits that the process of determining the debtor's liability to all fifty-two investors is labor-intensive, a more focused investigation is required.

For example, the U.S. Trustee might wish to consider an attachment that lists the amounts invested by the various investors and the dates that the funds were transferred to the debtor or entities controlled by the debtor. If the U.S. Trustee believes that the debtor's records fail to provide sufficient information from which

35

these transactions can be determined, the U.S Trustee could also consider an amended claim for failure to keep or preserve recorded information under § 727(a)(3). Or, if the U.S. Trustee only seeks an explanation focused on the three investors, the U.S. Trustee could assert a claim that the debtor has failed to show where the money from these investors that was supposed to be invested in the 50th Street property went, or that the debtor failed to show where the proceeds from the sale of this property went.

Besides the proceeds of specific transactions, the U.S. Trustee has also failed to identify any other assets whose unexplained loss could state a claim under § 727(a)(5).

On the other hand, the debtor is incorrect that, because the U.S. Trustee did not ask for an explanation at the meeting of creditors, the U.S. Trustee is prohibited from proceeding under § 727(a)(5). The statute only requires that the debtor provide the explanation "before determination of denial of discharge under this paragraph." 11 U.S.C. § 727(a)(5).

In sum, the U.S. Trustee has failed to specifically identify an asset or assets that have been lost or have decreased in value under § 727(a)(5). Therefore, the U.S. Trustee has failed to state a claim for denial of discharge in Count 4. Absent the filing of an amended complaint that contains more detailed allegations that

36

identify the specific assets that were lost, the Court will grant the debtor's motion to dismiss Count 4.

## E. LEAVE TO AMEND

Civil Rule 15(a)(2), relevant here under Bankruptcy Rule 7015, requires a court to "freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15; Fed. R. Bankr. P. 7015. Where a complaint could state a claim if more carefully drafted, a court must give a plaintiff at least one chance to amend before dismissing the complaint with prejudice. *U.S. ex rel. Dunn v. Procarent, Inc.*, Case No. 3:11-cv-704, 2022 WL 2834685, at *21 (W.D. Ky. July 20, 2022) (citing *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 644 (6th Cir. 2003) (additional citation omitted). Therefore, the Court gives leave for the U.S. Trustee to file an amended complaint by **February 3, 2023.** Nothing in this decision should be construed as limiting the U.S. Trustee from amending Counts 1 and 2 or adding or deleting claims for relief.

## CONCLUSION

For the reasons explained above, the Court denies the debtor's motion to dismiss Counts 1 and 2 and gives the U.S. Trustee until **February 3, 2023**, to file an amended complaint as to Counts 3 and 4, or the Court will dismiss Counts 3 and

4.  If an amended complaint is filed, the debtor must respond to the amended complaint **within 21 days**.

      IT IS SO ORDERED.

38